SNOWDEN ET AL. *v.* MAYOR AND CITY
COUNCIL OF BALTIMORE ET AL.

[No. 147, September Term, 1960.]

444

*Decided March 14, 1961.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Juanita Jackson Mitchell,* for appellants.

*Leonard Goodman,* for Keyser Investments, Inc., one of the appellees.

*John A. Dewicki, Assistant City Solicitor,* with whom was *Harrison L. Winter, City Solicitor,* on the brief, for Mayor and City Council of Baltimore, the other appellee.

HAMMOND, J., delivered the opinion of the Court.

Appellee, Keyser Investments, Inc., purchased for investment in 1949 a four-story row house at 1523 McCulloh Street, Baltimore. The house then contained eight apartments which the new owner reduced to seven. An inspection of the premises by the City's Bureau of Building Inspection early in 1959 resulted in an order that the number of apartments be reduced from seven to four, to bring about compliance with the population density requirements of the zoning ordinance.

Keyser appealed to the Board of Municipal and Zoning Appeals of Baltimore City, claiming that a non-conforming use of the building for seven families existed on March 30, 1931, when the zoning ordinance became effective, so that continued use of the seven apartments was permissible under the * * * ordinance (Art. 40, Sec. 31, Baltimore City Code, 1950). The claims were opposed by home owners nearby and the Baltimore Urban Renewal and Housing Authority.

On conflicting testimony, the Board held that the use of the building to house seven families had been shown as of March 30, 1931.

The Baltimore City Court sustained the Board on the appeal by the protestants, and the appeal to this Court followed.

The judicial function in appeals from an administrative agency is well established and defined. The court will correct illegal actions and those which are arbitrary and unreasonable because they are not based on substantial evidence but it will not substitute its own independent examination of or its own judgment on the facts for those of the agency to which the carrying out of state policy has been delegated. *Aaron v. City*

of *Baltimore,* 207 Md. 401, 406; *Heath v. Mayor & City Council of Baltimore,* 187 Md. 296, 304; *Wakefield v. Kraft,* 202 Md. 136, 141; *City of Baltimore v. Weinberg,* 204 Md. 257, 261; Oppenheimer, *Administrative Law in Maryland,* 2 Md. L. Rev. 185, 208-210.

Judge Harlan found "that although the evidence is conflicting as to whether or not a non-conforming use existed for this property * * * there was substantial evidence before the Board upon which they could base their findings * * *." In the property on September 29, 1913, according to the Health Department Plumbing division records, there were "one water closet on each of the first, second, third and fourth floors; one water basin on the first floor, two on the second, one on the third and one on the fourth; one bathtub on each of the first, second, third and fourth floors; and seven sinks as follows: one in the basement, one on the first floor, two on the second floor, two on the third floor, and one on the fourth floor." The owners produced a disinterested witness, a Mr. Sussman, whose family had a grocery store near 1523 McCulloh Street and who daily delivered orders throughout the neighborhood in the early twenties. He recalled "vividly" the entire area changing, and the conversion to apartment houses to the extent his father "had to move in 1925 because of his customers moving out of the area." He has owned real estate in the neighborhood since 1930 and said that "any conversions were done in the twenties." There were produced the earliest records of the Baltimore Gas and Electric Company on the subject showing that there were eight electric meters in the property in 1936, seven apartment meters and one basement and public service meter. The records showed that six meters were installed in 1936; the date of installation of the other two is shown as "unknown." The notation is: "The old record is destroyed when a meter is replaced. Also some of the meters have no date of installation because of the length of time on the premises and failure to transcribe the date to each successive meter book."

Miss Anne Harris, unable to appear because of illness,

wrote a letter which came in without objection, stating that her mother died in March 1930 and in the following September or October she and her sister moved into 1523 McCulloh Street and occupied the fourth floor apartment. There were eight apartments when she moved in, two on each of the first three floors, one on the fourth floor, and one in the basement. She has lived there ever since she moved in. At a second hearing before the Board, the protestants offered a death certificate showing that Miss Harris' mother died in March 1932. Miss Harris' mistake as to the year of her mother's death could have been found to have done no more than show that she moved to McCulloh Street in 1932 instead of in 1930. The Board could have concluded that when she moved in the building in the fall of 1932, there were eight apartments in existence. There is no suggestion that the use and physical arrangement of the property was not the same eighteen months after March 30, 1931, as it was on the critical date.

Unlike the situation in *Aaron v. City of Baltimore, supra,* where significant facts set out in an affidavit relied on by the Board were demonstrated to have been glaringly inaccurate, the only challenge to the accuracy of Miss Harris' allegations was as to the year her mother died, which need not have affected the truth of the significant facts she alleged, since the death merely fixed the time she observed those facts.

The chief reliance of those who claimed there was no nonconforming use was the police report of July 1931 showing three apartments, although two neighbors who had never been in the property testified it had only three apartments in 1931.

The substantial evidence test "means that the reviewing court's inquiry is whether on the record the agency could reasonably make the finding." 4 Davis, *Administrative Law Treatise,* Sec. 29.11, p. 186 (1958). The text goes on to point out that the scope of review of administrative findings and of jury verdicts is the same, but the scope of review of judge made findings is broader for it is governed by the "clearly

erroneous test; findings may be clearly erroneous without being unreasonable." Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (quoting *Consolidated Edison Co. v. National Labor Relations Board,* 305 U. S. 197, 229, 83 L. Ed. 126). The heart of the fact finding process often is the drawing of inferences from the facts. The administrative agency is the one to whom is committed the drawing of whatever inferences reasonably are to be drawn from the factual evidence. "The Court may not substitute its judgment on the question whether the inference drawn is the right one or whether a different inference would be better supported. The test is reasonableness, not rightness." Davis, *op. cit.,* Sec. 2905, p. 139.

We think the Board, from its long experience in the field and its general expertise, may reasonably have concluded that the police report gave inherent evidence that its compiler had been more perfunctory than precise (it showed every house it listed in the block on both sides as having three apartments), that the seven kitchen sinks meant seven families living in the property in 1913, that no conversions took place after 1930, that the six meters installed in 1936 were replacements of others that long had been there, and that Miss Harris was right in her statement that there were eight apartments in 1932 and that at least seven had continuously existed since, and therefore that there was a non-conforming use as of March 30, 1931, which had not been abandoned.

It may be (although we do not so say) that we would have drawn different inferences or conclusions from the evidence, or that we think the Board's action to have been unfortunate and erroneous, but it is the judgment of the Board, not ours, which controls if reasonable men could have done as the Board did, for, as has been said, the test is reasonableness not rightness. We conclude that on the evidence before it the conclusions reached by the Board were not arbitrary or unreasonable, and the order appealed from must be affirmed.

*Order affirmed, with costs.*