550 A.2d 664

**BOARD OF COUNTY COMMISSIONERS FOR CECIL COUNTY**

v.

**Lundy B. HOLBROOK.**

**No. 57, Sept. Term, 1987.**

Court of Appeals of Maryland.

Nov. 30, 1988.

Edwin B. Fockler, III, Elkton, for appellant.

James F. McAvoy, Elkton, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

COLE, Judge.

In this case we will decide whether the Cecil County Board of Appeals acted arbitrarily and capriciously in denying a mobile home owner's request for a special exception to permanently locate his trailer in an area zoned for agricultural use. We set forth the facts as follows.

In July, 1985, the respondent, Lundy B. Holbrook, obtained a temporary building permit [1] which permitted him to move a mobile home onto his heavily wooded 2.8 acre parcel of land located in a sparsely developed rural area of Cecil County. Holbrook placed his mobile home in a small clearing near the borderline between his property and a 1.5 acre tract owned by Mrs. Georgia Peters and her husband. Elk Neck State Forest (on two sides) and Turkey Point Road form the remaining boundaries to the Holbrook parcel.

In October, 1985, Mrs. Georgia Peters and her husband completed construction of a new residence with an appraised value of $147,000, located less than 150 feet [2] from their neighbor's mobile home. One month earlier, after abandoning his alleged plans to build a house, Holbrook filed an application for a permanent special exception. Alarmed at the prospect that their unobstructed view of the nearby trailer would become permanent, Mrs. Peters vigorously protested the granting of the special exception at a hearing before the Cecil County Board of Appeals. She testified: "I have no objections for him to keep a trailer there while building a house. But I do object to a trailer

---

1. The Cecil County Zoning Administrator is authorized by § 4.11 of the Cecil County Zoning Ordinance (1979, as amended through 1984) to issue such a temporary permit during construction of a permanent dwelling.

2. Mrs. Peters estimated that approximately 80 to 150 feet separated her house from the mobile home. Photographic evidence supported this uncontroverted testimony.

being permanent[ly] adjacent to my property because I feel it would be detrimental to the value of my home." To buttress her assertion, Mrs. Peters offered into evidence six photographs of the mobile home as seen from her house.

Next, Patrick Conaway, the Zoning Administrator, delivered the Cecil County Planning Commission's recommendation to the Board. Cecil County Zoning Ordinance § 7.05(F)(3) (1979, as amended through 1984) charges the Planning Commission with reviewing applications for special exceptions and making recommendations to the Board of Appeals. The Commission, in a written report to the Board, recommended disapproval of Mr. Holbrook's application "as the location of a mobile home on the parcel would be disrupting to property values, and establish a burden greater than that normally associated with similar uses in an Agricultural–Residential zone." In addition, Mr. Conaway testified that the Board of Appeals had granted three special exceptions for the use of mobile homes within one-half mile of Holbrook's property. The Court of Special Appeals highlighted this fact but failed to acknowledge that these permits were all temporary in nature, whereas Holbrook sought a permanent exception. *Holbrook v. Board of County Comm'rs.,* 70 Md.App. 207, 211, 520 A.2d 1096 (1987). Mr. Conaway also characterized the area as "not a large growth area."

After the hearing the Board of Appeals in a written opinion denied the respondent's application for the special exception use. It reasoned:

A Mrs. Peters, owner of the adjacent parcel, appeared in protest. She indicated that she presently owned 1.57 acres of land upon which she had constructed in October, a $147,000 residence. She stated that the unit is from 80 to 150 feet away and is visible from her front yard. The effect of this visibility is borne out by Exhibits 1 through 6 [photographs of the respondent's mobile home] which were filed by the protestant and vividly indicate the dehabilitating [sic] effect of the mobile home on the value of her property.

Under the circumstances, and in accordance with the recommendation of the Planning Commission, the Board will deny the application on the grounds that it does otherwise substantially diminish adjacent property values and, under *Schultz v. Pritts*, [291 Md. 1, 432 A.2d 1319 (1981)] create significantly greater adverse effects in this location than were it located in other areas in the zone.

The Circuit Court for Cecil County affirmed the Board's denial of the permit. Mr. Holbrook appealed this result to the Court of Special Appeals, which reversed. That court held as follows:

Under *Schultz*, the proper test to be applied by the Board in determining whether to deny the special exception was whether evidence was presented which demonstrated that a mobile home on the appellant's land had any adverse effects on the neighboring properties above and beyond those inherently associated with such a special exception use irrespective of its location within the A–R zone. We hold that since there was no substantial evidence before the Board of Appeals to meet that test, its denial of the appellant's application was arbitrary, capricious, and illegal.

70 Md.App. 207, 217, 520 A.2d 1096 (1987).

We granted the Board's petition for a writ of certiorari to consider whether the intermediate appellate court's decision comported with the applicable zoning ordinance and with the standard for judicial review of a special exception set forth in *Schultz v. Pritts*, 291 Md. 1, 432 A.2d 1319 (1981). Because these issues are interrelated we shall address them together.

The property in question is zoned agricultural (A–R) under the Cecil County Zoning Ordinance (1979, as amended through 1984). Section 5.03(A) of the ordinance states the purpose of this zoning classification:

The agricultural zone shall provide for agricultural, forestry, and other uses compatible with a rural environment, and protect these established uses from uncontrolled development which might depreciate the agri-

cultural economy of the County. This zone is also intended to prevent premature urbanization in areas where public utilities, roads, and other public facilities are planned to meet rural needs only and where present public programs do not propose installation suitable for development at higher densities.

Detached single family dwellings located on at least one acre of land are a permitted use in this zone. Section 5.03(B)(2).

Mobile homes [3] are permitted by special exception when approved by the Board of Appeals. § 5.03(E)(12).[4]

■ The concept of the special exception is set forth in § 3.02 of the ordinance as:

A use that would not be appropriate generally or without restriction throughout the zone, but which, if controlled as to number, area, location or other factors would promote the general public health, safety, welfare, comfort, convenience, or appearance.

Section 7.07(A) of the ordinance provides:

Special exceptions as defined in Article 3, may be granted by the Board of Appeals after considering all facts in the case, and the Board shall render a decision in accordance with the following principles:

1. Such use or any operations thereto will not be detrimental to or endanger the public health, safety, or general welfare.

2. The use will not be unduly injurious to the peaceful use and enjoyment of other property in the neighborhood,

---

**3.** Section 3.02 of the ordinance defines "Mobile Home" as: A building unit constructed on a chassis for towing to the point of use and designed to be used without a permanent foundation for continuous year round occupancy as a residence. The removal of the unit from its chassis or the placing of the unit on a permanent foundation shall not be construed as a change in the character of the mobile home under this ordinance.

**4.** This special exception use is limited to "Mobile homes on existing lots not part of a mobile home subdivision or mobile home park; maximum one mobile home per lot...."

nor substantially diminish or impair property values in the neighborhood.

3. The establishment of the use will not impede the normal and orderly development and improvement of the surrounding property for uses permitted in the zone.

4. The use will not, with respect to existing development in the area and development permitted under existing zoning, overburden existing public facilities, including schools, police and fire protection, water and sewer, public road, storm drainage, and other public improvements.

5. The use shall not adversely affect critical natural areas or areas of ecological importance.

6. The use shall, in all other respects, conform to the applicable regulations of the zone in which it is located.

In *Schultz v. Pritts, supra,* this Court determined the applicable standard for judicial review of the grant or denial of a special exception use. We observed:

The special exception use is a part of the comprehensive zoning plan sharing the presumption that, as such, it is in the interest of the general welfare, and therefore, valid. The special exception use is a valid zoning mechanism that delegates to an administrative board a limited authority to allow enumerated uses which the legislature has determined to be permissible *absent any fact or circumstance negating the presumption.* The duties given the Board are to judge whether the *neighboring properties in the general neighborhood would be adversely affected* and whether the use in the particular case is in harmony with the general purpose and intent of the plan.

\*    \*    \*    \*    \*    \*

The extent of any harm or disturbance to the neighboring area and uses is, of course, material. If the evidence makes the question of harm or disturbance or the question of the disruption of the harmony of the comprehensive plan of zoning fairly debatable, the matter is one for the Board to decide. But if there is no probative evidence

of harm or disturbance in light of the nature of the zone involved or of factors causing disharmony to the operation of the comprehensive plan, a denial of an application for a special exception use is arbitrary, capricious, and illegal. *Turner v. Hammond,* 270 Md. 41, 54–55, 310 A.2d 543, 550–51 (1973); *Rockville Fuel & Feed Co. v. Board of Appeals of Gaithersburg,* 257 Md. 183, 187–88, 262 A.2d 499, 502 (1970); *Montgomery County v. Merlands Club, Inc.,* 202 Md. 279, 287, 96 A.2d 261, 264 (1953); *Anderson v. Sawyer,* 23 Md.App. 612, 617, 329 A.2d 716, 720 (1974). These standards dictate that if a requested special exception use is properly determined to have an adverse effect upon neighboring properties in the general area, it must be denied.

291 Md. at 11–13, 432 A.2d 1319 (emphasis in original).

We then defined the specific nature of the requisite adverse impact required to warrant denial of a special exception application:

[A] special exception use has an adverse effect and must be denied when it is determined from the facts and circumstances that the grant of the requested special exception use would result in an adverse effect upon adjoining and surrounding properties unique and different from the adverse effect that would otherwise result from the development of such a special exception use located anywhere within the zone. Thus, these cases establish that the appropriate standard to be used in determining whether a requested special exception use would have an adverse effect and, therefore, should be denied is *whether there are facts and circumstances that show that the particular use proposed at the particular location proposed would have any adverse effects above and beyond those inherently associated with such a special exception use irrespective of its location within the zone.*

291 Md. at 15, 432 A.2d 1319 (emphasis supplied).

In summary, where the facts and circumstances indicate that the particular special exception use and loca-

tion proposed would cause an adverse effect upon adjoining and surrounding properties unique and different, in kind or degree, than that inherently associated with such a use regardless of its location within the zone, the application should be denied. Furthermore, if the evidence makes the issue of harm fairly debatable, the matter is one for the Board's decision, and should not be second-guessed by an appellate court.

The *Schultz* test accords with the general standard for judicial review of the ruling of an administrative agency, which we have defined as "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached; this need not and must not be either judicial fact-finding or a substitution of judicial judgment for agency judgment." *Supervisor of Assess. v. Ely*, 272 Md. 77, 84, 321 A.2d 166 (1974).

■ Additionally, in *Snowden v. Mayor and C.C. of Balto.*, 224 Md. 443, 448, 168 A.2d 390 (1961), we said:

The heart of the fact finding process often is the drawing of inferences from the facts. The administrative agency is the one to whom is committed the drawing of whatever inferences reasonably are to be drawn from the factual evidence. "The Court may not substitute its judgment on the question whether the inference drawn is the right one or whether a different inference would be better supported. The test is reasonableness, not rightness." (Citation omitted).

Therefore, due deference must be given to the right of an administrative agency, such as the Cecil County Board of Appeals, to draw reasonable inferences from the facts and circumstances presented before it.

■ With the foregoing in mind, we must determine whether sufficient evidence was presented to the Board to justify its inference that the proposed special exception use would cause the requisite adverse impact upon the "property values in the neighborhood." Cecil County Zoning Ordi-

nance § 7.07(A)(2). Initially, we reject respondent's notion that the rural nature of the area in question requires an expansive interpretation of the word "neighborhood." As we explained in another zoning context, "the neighborhood in any area must be an area which *reasonably* constitutes the immediate environs of the subject property." *Clayman v. Prince George's Co.*, 266 Md. 409, 418, 292 A.2d 689 (1972) (emphasis in original). In the case at bar, the immediate environs of the Holbrook property include at least the State Forest and the Peters's parcel; thus, an adverse impact there need extend no further to justify denial of Holbrook's application. Whereas the property value of the forest might likely remain undiminished by the proximity of a mobile home, our inquiry focuses on the evidence of adverse impact on the Peters's property.

As a general matter, we note that the Board justifiably assumed that the conspicuous presence of a mobile home will lower adjacent property values. While a mobile home may justifiably represent a highly valued and attractive possession to its owner, a real estate appraiser might objectively view the same conspicuous trailer as an eyesore and a detriment to neighboring properties of higher value. Indeed, the intermediate appellate court said, "any fine residential structure would lessen in value if adjoined by a mobile home." 70 Md.App. at 215, 520 A.2d 1096.

Moreover, we believe that the facts and circumstances of this case, evidenced by the undisputed testimony and photographic exhibits, clearly satisfy the *Schultz* standard of particular adverse impact. The evidence revealed that the Peters built their $147,000 house in a uniquely valuable, heavily forested, low-growth area. Moreover, photographs clearly depicted the direct and proximate view of the mobile home from the Peters's home. The Board found that this evidence "vividly indicate[d] the dehabilitating (sic) effect of the mobile home on the value of [the Peters's] property," inferring thereby that the trailer's continued presence

would create "significantly greater adverse effects in this location than were it located in other areas in the zone."

We find no cause to question the Board's conclusion that the mobile home, in this particular location, would impair neighboring property value to a greater extent than it would elsewhere in the zone. Countless locations exist within the zone, and indeed, within Holbrook's own property, where the presence of a mobile home would have no effect whatsoever upon adjoining property values. If, for example, trees or topography hid the mobile home from the view of the neighboring property owners, there would remain, as the Board's counsel conceded, absolutely no grounds for denying a special exception permit. The Court of Special Appeals failed to acknowledge these potential scenarios. Instead, the intermediate appellate court based its holding on the mistaken premise that, regardless of a mobile home's particular location within a zone, its negative impact on adjacent properties would remain the same.

At any rate, in light of the mobile home's high degree of visibility in this particular location, its proximity to the Peters's home, and the markedly disparate values of the Holbrook and Peters residences, we hold that the Board reasonably concluded that the permanent presence of the Holbrook mobile home would create significantly greater adverse effects in this location than were it located elsewhere in the zone.

Accordingly, we reverse the decision of the Court of Special Appeals and reinstate the order of the Board of Appeals of Cecil County, affirmed by the Circuit Court for Cecil County, denying the appellee's application for a special exception.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY. RESPONDENT TO PAY THE COSTS.