652 A.2d 1175

**Elmer James EBERLE**

v.

**BALTIMORE COUNTY, MARYLAND.**

**No. 459, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Feb. 2, 1995.

Steven A. Charles (Rochlin, Settleman & Dobres, P.A. on the brief) Baltimore, for appellant.

James A. Helfman, Asst. County Atty., Towson, for appellee.

Argued before ALPERT, CATHELL and MURPHY, JJ.

ALPERT, Judge.

This case presents an appeal of the ruling of the Board of Appeals of Baltimore County ("Board of Appeals"), denying accidental disability benefits to appellant, Elmer James Eberle. The Circuit Court for Baltimore County affirmed the Board of Appeals's decision and appellant asks whether the Board of Appeals and the circuit court erred in denying him accidental disability retirement benefits pursuant to section 23–55 of the Baltimore County Code. We shall affirm.

## Facts and Proceedings

The facts of this case are undisputed. In 1957, appellant, Elmer James Eberle ("Eberle"), was working as a meat cutter and sustained a work-related injury to his right knee. As a result of that injury, he underwent a right medial meniscecto-

my[1] in 1958, and, after the operation, he returned to all previous activities and had no difficulty or pain in the knee. In 1983, Eberle obtained employment with the Baltimore County Government ("the County"). When Eberle began his employment with the County, he had a clean bill of health and no work restrictions.

Eberle began in the position of warehouseman, but was moved to a truck driver position within approximately six months after his start date. On September 15, 1987, while in the course of his employment with the County, Eberle sustained serious injury to his right knee. A workers' compensation claim was filed and the compensability of the injury was not disputed by the County. Eberle was paid his salary in lieu of temporary total disability benefits during an extended period of care from December 30, 1987 through January 3, 1988, February 21, 1989 through February 22, 1989, and September 10, 1991 through March 9, 1992. A stipulated award was entered on November 16, 1992, and it was found that Eberle sustained a forty-five percent (45%) permanent partial disability of the right leg, with thirty-five percent (35%) due to the accidental injury on September 15, 1987, and ten percent (10%) due to a pre-existing condition.

Eberle later returned to work, and on September 28, 1989, he suffered another work-related injury, this time to his left knee. Another workers' compensation claim was filed, and again, compensability was not disputed by the County. In December, 1989, Eberle underwent arthroscopic surgery on his left knee. From September 28, 1989, through April 30, 1990, while he recovered from the injury to his left knee, Eberle was paid full salary in lieu of temporary total disability benefits. Appellant returned to work for the County, but he continued to experience problems with his legs and on September 23, 1991, underwent a total knee replacement on his right knee.

---

1. A medial meniscectomy is the surgical removal of a crescent-shaped cartilage from the knee joint. 3 Schmidt's Attorney's Dictionary of Medicine, M–82, 1985.

On November 22, 1991, a hearing was held before the Workers' Compensation Commission on the issue of permanency as a result of the September 28, 1989 accident. In an Order dated November 26, 1991, the Commission found that Eberle sustained a twenty-five percent (25%) permanent partial disability of his left leg.

Following the total knee replacement, Eberle returned to work with the County, first working half days in March, 1992. Unable to return to his job as a truck driver, he worked putting school supply orders together. In April, 1992, Eberle resumed work for full days, but eventually he found he could not stay on his feet for any period of time. On May 12, 1992, he applied for accidental disability retirement benefits with appellee, the Board of Trustees of the Employees' Retirement System of Baltimore County ("the Board"). The Board denied Eberle's request for *accidental* disability benefits, awarding *ordinary* disability pension benefits instead. Eberle appealed the Board's decision and a *de novo* evidentiary hearing was held by the Board of Appeals on June 22, 1993, at which time Eberle and the County presented medical evidence on the nature and cause of his disability.

The Board of Appeals found that there was no issue concerning total disability because Eberle was, in fact, totally disabled. Thus, it had to review the evidence, testimony, and medical reports to determine whether Eberle was entitled to accidental disability retirement benefits under Baltimore County Code section 23–55 (1988), which provides that

> [u]pon the application of a member in service or of the employer, any member who has been totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, without willful negligence on his part, shall be retired by the board of trustees; provided that the medical board shall certify that such member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that such member shall be retired. No beneficiary entitled to an accidental disability

retirement allowance shall receive any allowance on account of ordinary disability.

The main issue, therefore, that the Board of Appeals was faced with was "whether or not the disability that the Applicant presently [had was] the 'natural and proximate result' of his accidents occurring on September 15, 1987 to his right knee and on September 28, 1989 to his left knee."

There were several different medical reports reviewed by the Board of Appeals. The reports prepared by Eberle's primary orthopedic surgeon, William I. Smulyan, M.D., often referred to a degenerative arthritis condition that Eberle suffered. In his report dated January 27, 1988, Dr. Smulyan commented:

> I have again explained to the patient that there is *evidence of preexisting degenerative arthritis in the knee* and that this has been aggravated by his injury.

(emphasis added). In a report dated December 4, 1990, Dr. Smulyan noted:

> It is my feeling that as a result of the injury of 9/15/87 the permanent and partial impairment of Mr. Eberle's right knee has worsened by an additional 5 percent over that amount which was deemed to be preexisting prior to that time. With regard to the left knee and the injury of September 28, 1989 the patient has sustained permanent and partial impairment of 10 percent superimposed upon a *preexisting figure of 15 percent because of degenerative arthritis which was present at the time of the injury.*

(emphasis added). In a report prepared on June 24, 1991, Dr. Smulyan again made reference to Eberle's arthritic condition:

> I have had a long talk with Mr. and Mrs. Eberle. It is my feeling that the patient has *post traumatic arthritis of the right knee associated with his previous meniscectomy 33 years ago.*

(emphasis added).

A report prepared by Barbara McLean, M.D., on Eberle's condition, dated May 26, 1992, was also submitted to the Board of Appeals. In this report, Dr. McLean summarized Eberle's condition:

There is no question that *Mr. Eberle's arthritis pre-existed his reported occupational injury.*  I believe it is reasonable to assume that he had a least some aggravation from this injury but it is not possible to tell whether there was any change in the underlying basic pathology by virtue of this injury.

(emphasis added).

A report prepared by Joel D. Meshulam, M.D., dated February 25, 1993, stated that Mr. Eberle had a history of problems with his right knee "dat[ing] back to a medial meniscectomy that left him entirely asymptomatic until he was injured in 1987, sustaining traumatic damage to [his] right knee, and again in 1989, sustaining similar damage to the left knee."  And a report prepared on July 3, 1990, by a consultant to whom Eberle was referred, indicated that he had a "chronic weight problem", "chronic degenerative problems with both knees," and "hypertension for approximately the last ten years."  The report indicated that "Mr. Eberle presented the weight loss program as a preventive measure to reduce further medical interventions for both knees" and that "[a]pparently Dr. Smulyan indicated that it would be advisable for Mr. Eberle to achieve a weight below 200 lbs."

Based on these medical reports and the testimony before it, the Board of Appeals was unable to conclude or find as a matter of fact that Eberle's permanent disability was "a natural and proximate result of his accidents occurring on September 15, 1987 and September 28, 1989," as required under section 23–55 for the award of accidental disability retirement benefits.  The Board of Appeals found that Eberle suffered from degenerative arthritis in his knees and thus he did not meet the burden of proving the causal connection between his present disability and the two accidents he sustained at work.  Because the medical reports were conflicting as to causation, the Board acted as factfinder and was

unable to reasonably conclude that the present disability of the Applicant [was] a direct result of the two accidents, and

as such the requirements of Section 23–55 of the *Baltimore County Code* [had] not been met....

Thus, the Board of Appeals denied accidental disability retirement benefits and entered an order granting Eberle ordinary disability retirement. Eberle appealed to the Circuit Court for Baltimore County, and the Board of Appeals' decision was affirmed. This appeal followed.

### Standard of Review

This court recently reiterated the standard for appellate review of administrative agency decisions in *Hill v. Baltimore County,* 86 Md.App. 642, 659, 587 A.2d 1155, *cert. denied,* 323 Md. 185, 592 A.2d 178 (1991). When reviewing the factual findings of administrative agencies, it is the court's duty to determine whether the agency's decision was supported by substantial evidence. *Id.* In applying this "substantial evidence" standard, the reviewing court must determine "whether a reasoning mind reasonably could have reached the factual conclusion that the agency reached." *Id.* (quoting *St. Leonard Shores Joint Venture v. Supervisors of Assessments of Calvert County,* 307 Md. 441, 447, 514 A.2d 1215 (1986)). A court "must not engage in judicial fact-finding or substitute [its] judgment for that of the agency." *Id.* (citing *St. Leonard Shores,* 307 Md. at 447, 514 A.2d 1215). Thus, we must examine the record to determine if there was substantial evidence from which a reasoning mind reasonably could have come to the factual conclusions reached by the Board of Appeals.

### Disability Retirement Benefits

Before we examine the evidence before the Board of Appeals, we take a moment to explain the different types of disability retirement benefits and the contentions of the parties in the case *sub judice.* The Baltimore County Code provides for two kinds of disability retirement benefits: ordi-

nary and accidental. Ordinary disability retirement benefits are available

> [u]pon the application of a member in service or of the employer ... who has had five (5) or more years of creditable service ... provided that the medical board, after a medical examination of such member, shall certify that such member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that such member should be retired.

Baltimore County Code, § 23–53 (1991). Accidental disability retirement benefits are available to an employee who

> has been totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, without willful negligence on his part.... 

Baltimore County Code, § 23–55 (1991). These disability retirement benefits differ significantly in value. Ordinary disability retirement yields a taxable payment of fifty percent (50%) of claimant's final average weekly wage, while accidental disability retirement benefits amount to a tax-free payment of sixty-six and two-thirds percent (66.66%) of claimant's final average weekly wage. Baltimore County Code, § 23–54, 23–57 (1991).

■ Due to the difference in the value of the two types of disability benefits, it is apparent that the legislature intended section 23–53, granting ordinary disability retirement benefits, to be a broad remedial pension statute. To recover these benefits, the statute requires only a minimal showing of permanent incapacitation for further performance of duty. Section 23–55, on the other hand, is a narrower statute, under which accidental disability retirement benefits can be recovered only with proof that a disability was the "natural and proximate result of an accident." This standard is more stringent than that required for ordinary disability benefits, and, as a result, it is more difficult to qualify for accidental disability retirement benefits.

Eberle claims he is entitled to accidental disability retirement benefits due to the knee injuries he sustained on September 15, 1987 and September 28, 1989. He argues that the Board of Appeals erred

> as a matter of fact and law in refusing to find that he suffered an accidental disability and in interpreting [ ] [s]ection 23–55 in such a manner as to prevent recover[y] for a disability when a preexisting condition becomes exacerbated as a result of a compensable, work-related injury.

Explaining that employee pension legislation must be liberally construed, appellant maintains that the Board of Appeals misconstrued section 23–55 "to require that [his] 1987 and 1989 injuries be the *sole and exclusive* cause of his disability." Appellant contends that there was insufficient evidence for the Board of Appeals to determine the relationship between his preexisting condition and his present disability, so the decision must have been based on the fact that his preexisting condition contributed to his present disability. This, appellant argues, was error as a matter of law, because section 23–55 does not require the injuries be the *sole* cause of the disability. Furthermore, appellant asserts that the evidence before the Board of Appeals was ample to prove that his permanent disability was causally related to the injuries he incurred in 1987 and 1989.

Appellee, on the other hand, argues that there was substantial evidence from which the Board of Appeals could have made its decision. Section 23–55 requires a claimant to prove "total [ ] and permanent disability for duty as the *natural and proximate result of an accident* occurring while in the actual performance of duty at some definite time and place, without willful negligence...." (emphasis added). Thus, appellee contends, to qualify for accidental disability there must be proof of causal linkage or relation between the accident or accidents and the permanence of the incapacity. Appellee argues that this causal linkage was not proved by Eberle because he suffered from a preexisting degenerative arthritis problem that was clearly referenced by numerous medical opinions. Appellee contends, therefore, that ordinary disabili-

ty retirement benefits were properly awarded. We agree with appellee.

## Discussion

■ Keeping in mind that we must review the Board of Appeals's decision under the substantial evidence standard discussed earlier, we now address whether the Board of Appeals erred in its decision to deny Eberle accidental disability retirement benefits. There have been no cases in Maryland with facts similar to the instant case in which Baltimore County Code section 23–55 has been interpreted. There have been a number of cases, however, in which the denial of accidental disability retirement benefits has been challenged under the applicable Baltimore County Code, Baltimore City Code, and Maryland Code sections.[2] *See, e.g., Courtney v. Bd. of Trustees of the Maryland State Retirement Systems,* 285 Md. 356, 402 A.2d 885 (1979); *Minch v. Bd. of Trustees of the Employees' Retirement System of Baltimore County,* 273 Md. 167, 327 A.2d 889 (1974); *Bd. of Trustees of the Employees' Retirement System of the City of Baltimore v. Grandinetti,* 269 Md. 733, 309 A.2d 764 (1973); *Baker v. Bd. of Trustees of the Employees' Retirement System of the City of Baltimore,* 269 Md. 740, 309 A.2d 768 (1973).

In *Minch,* 273 Md. at 169, 327 A.2d 889, the Court of Appeals noted that the Baltimore County Code section pertaining to accidental disability retirement benefits had not been previously considered by the court. By analogy to comparable statutory provisions found in the Baltimore City Code, the Court explained the rule concerning the grant or denial of accidental disability retirement benefits:

---

**2.** The wording of Baltimore City Code (1966), Art. 22, § 6(e), Md.Ann. Code, State Personnel and Pensions § 29–109 (1991), formerly (1978 Repl.Vol.) Art. 73B, § 86(4a), and former section 20–22 of the Baltimore County Code, is exactly the same as section 23–55 of the Baltimore County Code. Accidental disability retirement benefits are available to a member who is "totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, without willful negligence on his part...."

'[T]he injury, to be accidental, must result from some unusual strain or exertion or some unusual condition.... And if the resulting disability is ordinary instead of accidental, ... a pension is not allowable.'

*Id.* at 170, 327 A.2d 889 (quoting *Voss v. City of Baltimore,* 246 Md. 345, 353, 228 A.2d 295 (1967)).

In *Courtney,* 285 Md. 356, 402 A.2d 885, the Court of Appeals was again faced with an appeal of a denial of accidental disability retirement benefits. The Court explained that "an accidental injury 'does not include unexpected results not produced by accidental causes.'" *Id.* at 363, 402 A.2d 885 (quoting *Baker v. Board of Trustees,* 269 Md. 740, 745, 309 A.2d 768 (1973)) and that "[a]n unexpected result (the incapacitating injury) attributable to a preexisting condition is not, therefore, an accidental injury." *Id.* In *Baker,* 269 Md. at 743, 309 A.2d 768, the Court of Appeals reviewed the denial of accidental disability retirement benefits that had been sought by a marine engineer who suffered a heart attack while at work. Baker argued that the incapacitating heart attack he suffered on September 11 was a result of his striking his head on an overhead pipe at work on August 24. *Id.* Evidence included a medical report that noted that "the most probable date for this heart attack was .approximately two weeks prior to his visit of 8/30/71 when he had chest pains, dizziness and struck his head." *Id.* There was also Baker's own testimony that he had suffered from hypertension in 1962 and the testimony of a Board specialist who noted that Baker had arteriosclerotic cardiovascular disease prior to his head injury. *Id.* at 744, 309 A.2d 768. The Court of Appeals held that

[f]rom all the testimony there was substantial evidence from which the Board could have reasonably found, as it apparently did, that Baker had a predisposition toward this sort of attack and that his head injury was not the direct cause of the myocardial infarction.

*Id.* The Court reiterated that "an unexpected result attributable to a predisposition to a pre-existing physical condition is not an accidental injury." *Id.* at 745, 309 A.2d 768.

The question we are faced with in the instant case is whether the Board erred in denying accidental disability retirement benefits to Eberle. The Board concluded that Eberle's disability was not the "natural and proximate result" of the accidents he had in 1987 and 1989 because the causal linkage between the accidents and the disability could not be proved, given Eberle's previous knee injury, surgery, and preexisting degenerative arthritis. Because *Baker* is distinguishable from the case at bar and we found no Maryland cases with facts similar to those before us, we look to other jurisdictions to determine whether accidental disability retirement benefits may be awarded when a preexisting condition becomes exacerbated as a result of a compensable, work-related injury.

The Superior Court of New Jersey was faced with an appeal with facts quite similar to those in the case *sub judice*. *Quigley v. Bd. of Trustees of the Pub. Employees' Retirement System*, 231 N.J.Super. 211, 555 A.2d 642 (App.Div.1989), was a consolidated appeal in which two employees were denied accidental disability benefits [3] and awarded ordinary disability benefits instead. Raymond Hilsman, one of the employees/appellants, had been a truck driver for the Jersey City Board of Education. *Id.* 555 A.2d at 644. Hilsman was carrying a stack of chairs and several packages off of a truck when, unaware that someone had moved the control lever and that the tailgate was descending, he lost his balance and was thrown approximately five feet from the back of the truck onto the descending tailgate and then onto some stairs. *Id.* When Hilsman fell, he landed on both knees and then rolled onto his back. *Id.* 555 A.2d at 646. Hilsman was still suffering pain

---

**3.** In New Jersey, accidental disability retirement benefits are available if an employee "is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties...." N.J.S.A. § 43:15A–43 (1991). The wording of the New Jersey statute is slightly different than the requirement under the Baltimore County Code that the incapacitation be the "natural and proximate result of an accident." Baltimore County Code, § 23–55. Despite the difference in wording, the statutes are similar in their requirements.

seven months after the fall and underwent an operation to remove and resect a portion of torn cartilage in his right knee. *Id.* The orthopedic surgeon who operated, Dr. Mastomonaco, gave a post-operative diagnosis that Hilsman had "degenerative changes to the internal structure of [his] right knee." *Id.* When Dr. Mastomonaco testified in front of the administrative law judge, however, he expressed his opinion that the fall from the truck "was the direct cause of the injuries to Hilsman's right knee and also caused the aggravation of a preexisting injury to his left knee." *Id.* He opined that because the symptoms Hilsman suffered were not present until the accident, Hilsman would have been able to continue employment for at least another ten years, which would be well past normal retirement age, were it not for the injury he suffered at work. *Id.* 555 A.2d at 646–47.

The Division of Pensions had a second orthopedic surgeon, Dr. Bennet, examine Hilsman, and it was his opinion that "Hilsman's problems with his right knee were all the result of developmental osteoarthritis and degenerative changes in his knee and in other systems, including his high blood pressure and overweight condition." *Id.* 555 A.2d at 647. According to Dr. Bennet, Hilsman's underlying condition could have flared up due to a traumatic injury, "but ... the degenerative changes, without the traumatic injury, would themselves have been sufficient to disable the claimant from continuing his employment." *Id.*

Despite a recommendation of the administrative law judge to the contrary, the Board of Trustees of the Public Employees' Retirement System concluded that Hilsman's condition "was the result of a 'combination of developmental degenerative arthritic changes in both of Hilsman's knees exacerbated by a chronic significant overweight condition and systemic degenerative changes caused by high blood pressure.' " *Id.* Thus, the Board found that the fall from the truck "merely aggravated [Hilsman's] preexisting problems and was not the substantial contributing cause of his disability." *Id.* The Superior Court, on appeal, found that even though there were conflicting medical opinions concerning Hilsman's injuries,

there was sufficient evidence in the record to support the Board's decision. *Id.* Thus, the Board's decision to deny accidental disability retirement was affirmed. *Id.* 555 A.2d at 649.

The facts in the case *sub judice* are strikingly similar to those in *Quigley.* Both Eberle and Quigley were diagnosed with preexisting degenerative arthritis in their knees. Both claimants had chronic weight problems and hypertension. And both suffered an accident while at work that exacerbated their knee problems and rendered them disabled. In *Quigley,* however, an expert testified specifically that even without the traumatic injury suffered by Quigley, the degenerative changes themselves would have rendered him disabled. In the instant case, on the other hand, no expert went so far as to conclude that Eberle's disability would have resulted even without the accidental injuries he incurred. Despite the absence of expert testimony drawing such a conclusion in Eberle's case, after reviewing the record in the case, we are convinced that there was relevant and substantial evidence from which the Board of Appeals could have determined that Eberle's disability was not the "natural and proximate result" of the injuries he sustained.

The facts from which the Board made its determination to deny accidental disability retirement benefits were as follows. Eberle is a fifty-seven year old man who is five foot, nine and one-half inches in height and weighs approximately 273 pounds. He was chronically overweight and had been assigned to a "weight loss program as a preventive measure to reduce further medical interventions for both knees." He has suffered from high blood pressure for ten years. In 1957, he suffered an injury to his right knee and underwent a medial meniscectomy in 1958 on that knee. After the surgery, he had no additional problems with either of his legs until he sustained another injury to his right leg while working for Baltimore County on September 15, 1987. He began seeing an orthopedic surgeon, Dr. Smulyan, in January of 1988. His knee continued to bother him even after he returned to work in February of 1988, and then on September 28, 1989, Eberle

had another accident while working for the County, this time, injuring his left knee. Eberle had surgery on his left knee in December 1989 and continued to have pain in his right knee, necessitating a total knee replacement in September 1991.

Most of the numerous medical reports before the Board mentioned a degenerative arthritis problem that Eberle suffered. Dr. Smulyan noted this problem on three separate occasions in his reports dated January 27, 1998, December 4, 1990, and June 24, 1991. Dr. Smulyan stated that Eberle had a "preexisting degenerative arthritis in his knee," "post traumatic arthritis of the right knee associated with his previous meniscectomy 33 years ago," and with regard to his left knee and injury of September 28, 1989, he sustained additional damage "superimposed upon a preexisting figure of 15 percent because of degenerative arthritis which was present at the time of the injury." Dr. McLean's report, dated May 26, 1992, noted that "Mr. Eberle's arthritis pre-existed his reported occupational injury." Dr. Robert W. Macht, in a report dated February 25, 1991, noted that there was "an additional 10% impairment of that leg due to the arthritic changes as noted on [the] x-ray at the time of his arthroscopic procedure." Dr. Stuart C. Levine, in a report dated September 1989, noted "[m]odern osteoarthritic changes ... in the knee joint and patella."

A report prepared by Dr. Meshulam on February 25, 1993, did not mention an arthritic condition; however, it did note Eberle's "long-standing history of knee difficulties ... dat[ing] back to a medial meniscectomy that left him entirely asymptomatic until he was injured in 1987, sustaining traumatic damage to the right knee, and again in 1989, sustaining similar damage to the left knee." Dr. Meshulam found that ten percent (10%) of Eberle's impairment "pre-date[d] the injuries of September 15, 1987, and [was] due to his prior right medial meniscectomy." No medical report indicated that Eberle's disability was caused by his injuries at work. Neither did any report specifically conclude that Eberle would have suffered this disability in the absence of these injuries. Based on the medical reports that were riddled with references to a preex-

isting degenerative arthritis problem in addition to hypertension and a chronic overweight problem, it was not error for the Board of Appeals to conclude that Eberle's disability was not the natural and proximate result of the accidental injuries he suffered.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.