686 A.2d 683

**Frederick W. AHALT**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 202, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Dec. 24, 1996.

John B. Walsh, Jr. (Chen, Walsh, Tecler & McCabe, L.L.P. on the brief), Rockville, for Appellant.

Clifford L. Royalty, Assistant County Attorney (Charles W. Thompson, Jr., County Attorney and Linda B. Thall, Senior Assistant County Attorney on the brief), Rockville, for Appellee.

Argued before FISCHER, HOLLANDER and EYLER, JJ.

HOLLANDER, Judge.

Frederick W. Ahalt, appellant, sought a service-related disability retirement from the Montgomery County Department of Fire and Rescue Services. The Montgomery County Merit System Protection Board ("Merit Board") concluded that appellant's disability was permanent, but it denied appellant a service-related disability retirement. Thereafter, appellant sought review in the circuit court, which affirmed. Appellant now presents the following issue for our consideration:

Did the circuit court err in not holding that the decision of the Merit Board was arbitrary, capricious, unreasonable and unlawful when reviewed under the facts and law of this case?

As we perceive neither error nor abuse, we shall affirm.

### Factual Background

Ahalt had been a firefighter in Montgomery County for 22 years. He had attained the rank of master firefighter when he began to experience pain and stiffness in his joints. Appellant first sought medical treatment from his family doctor for pain in his foot, caused by what was later diagnosed as a bone spur. He also began to have pain and stiffness in his neck, elbow, and knees, and sought treatment from Dr. Wei, a rheumatologist, in February 1991. Dr. Wei diagnosed appellant with osteoarthritis, a degenerative disease of the joints.

Appellant's duties as a master firefighter included such tasks as climbing up and down ladders, crawling through burning buildings, lifting and carrying stretchers and loading them into ambulances, as well as a number of training and maintenance tasks that involved long hours of standing or walking on hard surfaces. According to appellant, his pain

and stiffness began to interfere with his work performance in about February 1991. According to Ahalt's supervisor, Captain John Harris, appellant's pain, stiffness, and slowness had begun to affect his work about one year earlier. Dr. Wei's records place the onset of appellant's work performance difficulties as one year previous to Dr. Wei's first evaluation. Dr. Wei opined that while there was no causal relationship between firefighting and the onset of osteoarthritis, "the duties of [appellant's] occupation aggravate his condition."

In March 1991, appellant was placed on light duty. The County requested that he file a disability retirement, but he preferred to continue working in order to reach 25 years of service with the County. Moreover, he was not aware of any positions within the department that he would be able to perform. On July 24, 1991, Ramon Granados, who at that time was the Director of the Department of Fire and Rescue Services, requested a disability retirement for appellant.

The County's disability retirement administrator, the Prudential Insurance Company, granted appellant a temporary nonservice-connected disability retirement, effective December 7, 1991. Appellant appealed the decision to the County's Administrator, claiming that his disability was permanent and service-related. After a hearing, the Hearing Examiner issued an opinion recommending a temporary non-service-connected disability retirement.

Appellant appealed to the Merit Board, which, in July 1993, issued an opinion recommending a temporary, non-service-related disability retirement, after review of the record but without holding a hearing. Thereafter, upon Ahalt's appeal, the circuit court remanded the matter to the Merit Board for a *de novo* hearing.

Subsequently, the Merit Board's Hearing Examiner determined that appellant had a total and permanent disability, "which was aggravated in an unspecified manner by his work environment." Nevertheless, the Hearing Examiner recommended denial of the service-connected disability retirement, reasoning that "[t]he determinative issue on the Appellant's

eligibility for a service connected disability retirement is purely a question of law and turns on whether or not the Appellant must show a link between his total incapacity and the aggravation of his condition in the work environment." Disagreeing with appellant's position that he was required only to show that his condition was aggravated by the performance of his duties in order to receive a service-connected disability retirement, the Hearing Examiner concluded:

The provision requires total incapacity for duty "as the natural and proximate result of" one of three events: an accident, an occupational disease, or a condition aggravated. Thus, a link must be established between the total incapacity and the event. The Appellant's condition, osteoarthritis, is the underlying cause of his total incapacity based on uncontradicted medical evidence. The total incapacity was not caused by whatever aggravation the Appellant's job may have produced. This aggravation must be the natural and proximate cause of the total incapacity if the Appellant is to prevail and the evidence does not remotely suggest this possibility. It is clear that the Code provision requires an aggravation which is so significant that it has a causal effect on the totality and permanence of the incapacity.

The Merit Board accepted the recommendations of the Hearing Examiner; it denied appellant a service-related disability pension. After appellant unsuccessfully challenged the decision in the circuit court, he noted this appeal.

## Discussion

### I.

Our role in reviewing an administrative decision is "precisely the same as that of the circuit court." *Dep't of Health & Mental Hygiene v. Shrieves*, 100 Md.App. 283, 303–304, 641 A.2d 899 (1994); *see Moseman v. County Council*, 99 Md.App. 258, 262, 636 A.2d 499, *cert. denied*, 335 Md. 229, 643 A.2d 383 (1994). Like the circuit court, we must review the administrative decision itself. *Public Serv. Comm'n v. Baltimore Gas & Elec. Co.*, 273 Md. 357, 362, 329 A.2d 691 (1974); *see Dep't of*

*Econ. & Employment Dev. v. Hager,* 96 Md.App. 362, 625 A.2d 342 (1993).

 "Judicial review of administrative agency action is narrow." *United Parcel Serv. v. People's Counsel for Baltimore County,* 336 Md. 569, 576, 650 A.2d 226 (1994). In reviewing the Board's decision, this Court must not engage in judicial fact-finding. *Anderson v. Dep't of Pub. Safety,* 330 Md. 187, 212, 623 A.2d 198 (1993); *Board of County Comm'rs v. Holbrook,* 314 Md. 210, 218, 550 A.2d 664 (1988). Nor may we supply factual findings that were not made by the Board. *Ocean Hideaway Condo. Ass'n v. Boardwalk Plaza Venture,* 68 Md.App. 650, 662, 515 A.2d 485 (1986). Moreover, this Court may not uphold the agency's decision "unless it is sustainable on the agency's findings and for the reasons stated by the agency." *United Parcel Serv.,* 336 Md. at 577, 650 A.2d 226 (quoting *United Steelworkers v. Beth. Steel,* 298 Md. 665, 472 A.2d 62 (1984)); *see Harford County v. Preston,* 322 Md. 493, 505, 588 A.2d 772 (1991).

 Factual findings made by an agency are binding upon a reviewing court, so long as they are supported by substantial evidence. *United Parcel Serv.,* 336 Md. at 577, 650 A.2d 226; *Mortimer,* 83 Md.App. at 441, 575 A.2d 750; *Floyd v. County Council of Prince George's County,* 55 Md.App. 246, 461 A.2d 76 (1983). Substantial evidence has been defined as more than a scintilla of evidence. *Montgomery County v. Greater Colesville Citizens Ass'n,* 70 Md.App. 374, 382, 521 A.2d 770 (1987). Further, the inferences reasonably to be drawn from the facts are also left to the Board. *Holbrook,* 314 Md. at 218, 550 A.2d 664 (citing *Snowden v. Mayor and City Council of Baltimore,* 224 Md. 443, 448, 168 A.2d 390 (1961)); *see Moseman,* 99 Md.App. at 265, 636 A.2d 499. " 'The Court may not substitute its judgment on the question whether the inference drawn is the right one or whether a different inference would be better supported. The test is reasonableness, not rightness.' " *Snowden,* 224 Md. at 448, 168 A.2d 390 (citations omitted). *See People's Counsel for Baltimore County v. Mangione,* 85 Md.App. 738, 751, 584 A.2d

1318 (1991). Moreover, an appellate court must "review the agency's decision in the light most favorable to the agency, since decisions of administrative agencies are prima facie correct and carry with them the presumption of validity." *Baltimore Lutheran High School Ass'n v. Employment Security Admin.*, 302 Md. 649, 662–663, 490 A.2d 701 (1985).

■ As we said in *Mortimer v. Howard Research*, 83 Md.App. 432, 441, 575 A.2d 750 (1990), a decision is "not in accordance with law" when it is

arbitrary, illegal or capricious. In making a determination of whether the Board of Appeals' decision is arbitrary, illegal or capricious, the reviewing court must decide whether the question before the agency was fairly debatable. An issue is fairly debatable if reasonable persons could have reached a different conclusion on the evidence and, if so, a reviewing court may not substitute its judgment for that of the administrative agency. The fairly debatable test is analogous to the clearly erroneous standard under Rule 8–131(c) and a decision is fairly debatable if it is supported by substantial evidence on the record taken as a whole.

(Internal citations omitted.)

■ In contrast to findings of fact, however, an agency's interpretation of law is not entitled to deference. *Caucus Distributors v. Maryland Securities Comm'r*, 320 Md. 313, 324, 577 A.2d 783 (1990); *Maryland Admin. Bd. of Election Laws v. Billhimer*, 314 Md. 46, 59, 548 A.2d 819 (1988) *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989). *Gray v. Anne Arundel County*, 73 Md.App. 301, 307, 533 A.2d 1325 (1987). When the question before the agency involves interpretation of an ordinance or statute, our review is more expansive. *Liberty Nursing Ctr., Inc. v. Department of Health & Mental Hygiene*, 330 Md. 433, 443, 624 A.2d 941 (1993). We are not bound by the agency's interpretation. *Id.*; *Department of Health and Mental Hygiene v. Riverview Nursing Centre*, 104 Md.App. 593, 657 A.2d 372, *cert. denied*, 340 Md. 215, 665 A.2d 1058 (1995); *Department of Health & Mental Hygiene v. Reeders Memorial Home, Inc.*, 86 Md.App.

447, 586 A.2d 1295 (1991). Thus, "a reviewing court is under no constraints in reversing an administrative decision which is premised solely upon an erroneous conclusion of law." *People's Counsel for Baltimore County v. Maryland Marine Mfg. Co.*, 316 Md. 491, 560 A.2d 32 (1989).

## II.

The parties agree that appellant is permanently disabled. Their dispute centers on whether the disability is service-connected. Appellant seeks a service-connected disability retirement pursuant to § 33–43(e) of the Montgomery County Code, 1984, as amended, which provides in relevant part:

(e) Service-connected disability retirement. A member may be retired on a service-connected disability retirement if:

(1) The member is totally incapacitated for duty or partially and permanently incapacitated for duty as the natural and proximate résult of an accident occurring, or an occupational disease incurred or condition aggravated while in the actual performance of duty; that the incapacity is not due to willful misconduct or willful negligence, and the incapacity is likely to be permanent.

On the other hand, appellee asserts that appellant does not have a service-connected disability. Therefore, it contends that § 33–43(d) of the Montgomery Code, which pertains to a non-service-connected disability, applies here. It provides:

(d) Non-service-connected disability retirement. A member may be retired on a non-service-connected disability retirement if:

(1) The member has 5 years of credited service and is not eligible for normal retirement. . . .

(2) The member is mentally or physically incapacitated for the further performance of duty as the result of an illness or injury incurred after enrollment as a member, that the incapacity is not due to the member's willful negligence, and that the incapacity is likely to be permanent. In extenuating circumstances, the administrator may waive the

requirement that a member's incapacity is likely to be permanent and may approve a temporary disability retirement for one or more one-year periods until the incapacity is either removed or it becomes apparent that it is likely to be permanent;

(3) The member is not eligible for service-connected disability retirement; and

(4) The member is unable to productively perform the duties of another available position for which qualified.

It is undisputed that Ahalt did not sustain an accidental injury and he does not suffer from an occupational disease. Consequently, the focus here is on the third ground set forth in § 33–43(e) on which to predicate a service-connected disability: a "condition aggravated while in the actual performance of duty."

The Merit Board construed § 33–43(e) to require that the worker's incapacity must be "the natural and proximate result" of the "condition aggravated while in the actual performance of duty." In other words, it concluded that it is not enough that appellant suffers from a degenerative condition that is aggravated by work. Rather, the aggravation itself must be the reason for the disability.

According to appellee, appellant's disability is his osteoarthritis. It contends that the phrase "condition aggravated" requires a link between the disability and the aggravation; the aggravation must render the employee incapacitated in order for the disability to be service-connected. If the aggravation is so great as to be incapacitating, then, according to the County, it is service-connected.

Appellant argues, however, that the Merit Board and the County have erred in the interpretation of the ordinance. Appellant states:

The object or event triggering eligibility for retirement is a condition. That condition must be aggravated while in the actual performance of duty. Had the Montgomery County Council intended an aggravation to be required as the cause of the incapacity the language would have been "aggrava-

tion of a condition." However, the language in the statute is "condition aggravated." Mr. Ahalt's disability results from his osteoarthritis which was aggravated in the actual performance of duty. That aggravation was to such an extent that he was prevented from performing his duties and responsibilities as a Master Firefighter. That is all that is required under Section 33–43(e). A fair reading of the statute does not require that an applicant show that the aggravation of a condition was the natural and proximate cause of the total incapacity.

As we see it, the term "condition aggravated" cannot be divorced from its context. We must consider the meaning of the entire phrase "aggravated while in the actual performance of duty", which follows and modifies "condition", in the context of the entire ordinance.

Interpreting the "condition" clause of § 33–43(e) as urged by appellant would attenuate the "service-connected" element of the provision to such a degree as to render it virtually indistinguishable from the non-service-connected disability retirement provided for in § 33–43(d). We interpret ordinances under the same canons of construction that we apply to the interpretation of statutes. *Howard Research and Dev. Corp. v. Concerned Citizens for the Columbia Concept*, 297 Md. 357, 362, 466 A.2d 31 (1983); *Clarke v. County Comm'rs for Carroll County*, 270 Md. 343, 348, 311 A.2d 417 (1973); *Prince George's County v. Equitable Trust Co.*, 44 Md. App. 272, 280, 408 A.2d 737 (1979). A statute must be construed so as to "ascertain and carry out the intent of the legislature." *Montgomery County v. Buckman*, 333 Md. 516, 523, 636 A.2d 448 (1994); *see Stapleford Hall Joint Venture v. Hyatt*, 330 Md. 388, 400, 624 A.2d 526 (1993); *Taxiera v. Malkus*, 320 Md. 471, 480, 578 A.2d 761 (1990); *Jones v. State*, 311 Md. 398, 405, 535 A.2d 471 (1988). In considering the language of a statute, courts will give that language its natural and ordinary meaning. *Buckman*, 333 Md. at 523, 636 A.2d 448; *Harford County v. University of Maryland Medical System Corp.*, 318 Md. 525, 529, 569 A.2d 649 (1990); *NCR*

*Corp. v. Comptroller of the Treasury,* 313 Md. 118, 124, 544 A.2d 764 (1988). When a statute is unambiguous, the court need not look beyond the statute itself to identify the intent of the legislature. *Buckman,* 333 Md. at 523, 636 A.2d 448; *In re Criminal Investigation No. 1–162,* 307 Md. 674, 685, 516 A.2d 976 (1986); *Police Comm'r v. Dowling,* 281 Md. 412, 418, 379 A.2d 1007 (1977). Moreover, a statute is to be read "so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory." *Buckman,* 333 Md. at 524, 636 A.2d 448; *State v. 149 Slot Machines,* 310 Md. 356, 361, 529 A.2d 817 (1987). Appellant's reading of the ordinance is strained, and does not reflect the intent of the legislature in enacting both a non-service-connected disability provision and a service-connected disability provision. We agree with the County's construction of the ordinance.

Under appellant's reading, a service-connected disability may result from a work-related aggravation of a non-work-related condition. We rejected a similar argument in *Eberle v. Baltimore County,* 103 Md.App. 160, 652 A.2d 1175 (1995). *Eberle* involved "ordinary" and "accidental" disability retirements, analogous, respectively, to the non-service-connected disability retirement and service-connected disability retirement provided for by the Montgomery County Code.

The appellant in *Eberle* sustained two work-related knee injuries. There was also evidence that the appellant had preexisting degenerative arthritis in his knees. *Id.* at 164, 652 A.2d 1175. Accidental disability retirement was available to a worker who:

> has been totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, without willful negligence on his part....

*Id.* at 167, 652 A.2d 1175 (quoting Baltimore County Code, § 23–53 (1991)). The Board of Trustees denied Eberle's application for accidental disability benefits, but awarded him ordinary benefits. The Board of Appeals affirmed the decision, reasoning that Eberle's knee problems stemmed from

both the injuries and the arthritis, and therefore he could "not meet the burden of proving the causal connection between his present disability and the two accidents he sustained at work." *Id.* at 165, 652 A.2d 1175. The circuit court affirmed the Board's decision.

On appeal to this Court, Eberle argued that the Board had incorrectly interpreted the statute to require that his injuries be the "sole and exclusive cause of his disability." *Id.* at 168, 652 A.2d 1175. We affirmed the circuit court, which found that although no expert concluded that Eberle would have become disabled as a result of the arthritis if he had not also been injured at work, "there was relevant and substantial evidence from which the Board of Appeals could have determined that Eberle's disability was not the 'natural and proximate result' of the injuries he sustained." *Id.* at 173, 652 A.2d 1175.

We recognize that the Baltimore County Code provision in *Eberle* applied only to a work-place accident that occurs at "a definite time and place," and is therefore analytically distinct from the "condition" referred to in the Montgomery County Code. A "condition," by its nature, may arise suddenly or may develop gradually over time. The Montgomery County Code thus covers a wider range of potentially disabling occurrences than does the Baltimore County Code. Nevertheless, the analysis in *Eberle* is instructive, because it interpreted the phrase "the natural and proximate result" to mean that a work-place related occurrence must be the sole proximate cause of the incapacity.

The case is stronger here than in *Eberle* for denying service-connected disability benefits. In this case, there is uncontroverted medical documentation that Ahalt's condition was degenerative, leading inexorably to decreased joint mobility. It is thus evident that it was the condition, not the aggravation, that caused Ahalt's disability. The problem here is in some sense circular, because although the degeneration was inevitable, the rate at which the degeneration rendered Ahalt unable to perform his duties may have itself been

affected by the performance of his duties. If, however, hypothetically, Ahalt had begun a one-year sabbatical just before the first symptoms manifested themselves, he would have returned to work unable to perform his duties as a result of the osteoarthritis, which took a serious toll on his health and vigor.[1] If he had not continued to work as a firefighter after the onset of his symptoms, perhaps the disease would have progressed less quickly. But the cause of his disability would nonetheless be the osteoarthritis from which he suffers.

Appellant argues, alternatively, that even if the statute requires that the aggravation in the course of duty must be the sole proximate and natural cause of his incapacity, he has made this showing. Therefore, he asserts that the Merit Board erred in denying him a service-connected disability pension.

The Merit Board found that appellant's work activities aggravated his osteoarthritis. It also found, based on appellant's own testimony, that appellant's other life activities, such as sitting, walking, and driving, also exacerbated his condition. The Merit Board had substantial evidence from which it could conclude that appellant's incapacity was the natural and proximate result of his underlying osteoarthritic condition, and not that the incapacity was the natural and proximate result of the aggravation of the condition arising from the performance of his duties as a master firefighter.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

1. Appellees argue that Ahalt's failure to improve after his retirement is evidence that the aggravation that occurred at work did not contribute to his disability. We note that when a disease is by its nature degenerative, aggravation may mean an increase in the degeneration, and when the damage has been done it does not necessarily follow that stopping the aggravating activity will lead to improvement.