716 A.2d 290

MARYLAND SECURITIES COMMISSIONER

v.

U.S. SECURITIES CORPORATION, et al.

No. 924, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Aug. 26, 1998.

**576**

Julie L. Tewey, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellant.

Charles C. Roberts, Greenbelt, for appellees.

Argued before MURPHY, C.J., and WENNER and DAVIS, JJ.

DAVIS, Judge.

An Administrative Law Judge (ALJ) found, and the Maryland Securities Commissioner (Securities Commissioner) affirmed, that appellees Anthony D. Roberts and his company, U.S. Securities Corporation (USSC), violated the Maryland Securities Act by engaging in a scheme to defraud Maryland investors in connection with an offering of Printron, Inc. (Printron) stock during January and February 1992. Specifically, the ALJ and the Securities Commissioner found that appellees misrepresented and omitted material facts, thereby misleading investors regarding the true reasons that Printron was not available for sale in Maryland. The Securities Commissioner ordered appellees to pay a $30,000 fine, subject to mitigation for any amounts paid as restitution within thirty days of the issuance of the order. Appellees sought judicial review of the Securities Commissioner's decision by the Circuit Court for Montgomery County. It reversed the decision, holding that the fine was time-barred by the statute of limitations embodied in MD.CODE (1995 Repl.Vol.), CTS. & JUD. PROC. (C.J.) § 5–107. The Securities Commissioner appealed and raised one question for our review, reframed below:

Did the circuit court err in holding that C.J. § 5–107 bars an administrative action for the issuance of fines instituted more than one year from the date of the alleged violation?

Additionally, appellees present three questions that were raised, but not addressed, in the lower court due to the court's threshold decision that the statute of limitations set forth in C.J. § 5–107 applied. Nevertheless, because we will reverse that decision and answer question I in the affirmative, we will address the three additional questions. We reframe them as follows:

II. Was there a sale of securities in the State of Maryland implicating the regulatory authority of the Securities Commissioner?

III. Did appellees make any untrue statement of a material fact or omit any material fact thereby defrauding or deceiving any person in connection with the offer or sale of securities?

IV. Did appellees' actions constitute an act, practice, or course of business operating as a fraud or deceit on those attempting to purchase shares of the Printron special offering?

As with the first question, we answer these questions in the affirmative and reverse the judgment of the circuit court.

## FACTS

The Maryland Securities Division (Securities Division) began to investigate appellees' activities in late 1993, after it was contacted by the National Association of Securities Dealers, Inc. (NASD), a self-regulatory organization that polices the brokerage industry. NASD provided information that appellees may have offered and sold unregistered securities to more than twenty unknown Maryland investors during a September 1991 offering of Printron stock. The Securities Commissioner issued administrative subpoenas to appellees. Appellees, however, did not respond to them.

On January 25, 1995, the Securities Division brought an administrative action against appellees for fraud in the offer and sale of unregistered securities in violation of MD.CODE (1993 Repl.Vol., 1997 Supp.), CORPS. & ASS'NS (C.A. or Maryland Securities Act), §§ 11–301(2), 11–301(3), and 11–501. The Securities Division sought a fine of up to $5,000 per violation and revocation of appellees' broker-dealer registrations. While reserving final authority, appellant referred the matter to the Office of Administrative Hearings (OAH).

Prior to the OAH hearing, appellees filed a motion to dismiss, arguing that C.J. § 5–107 imposed an applicable one-year statute of limitations that began to run from the date of the alleged violations. Administrative Law Judge A. Michael Nolan denied appellees' motion to dismiss, holding that C.J. § 5–107 did not apply to administrative actions.

Based on the evidence produced at the two-day hearing, the ALJ issued his Proposal for Decision, finding that the Securities Division had established that appellees engaged in nine separate violations of the Maryland Securities Act, falling under C.A. §§ 11–301(1), 11–301(2), 11–301(3), and 11–501. Appellees filed exceptions to the proposed decision, including the ALJ's denial of their motion to dismiss.

On August 28, 1996, the Securities Commissioner issued a Ruling on Exceptions and Final Decision affirming the ALJ's denial of appellees' motion to dismiss on the basis of C.J. § 5–107. In his final decision, the Securities Commissioner adopted, with some modification, the ALJ's findings of fact and conclusions of law that appellees violated C.A. §§ 11–301(2), 11–301(3) and 11–501.[1] The Securities Commissioner reduced the fine recommended by the ALJ from \$45,000 to \$30,000.[2] The order provided that appellees "may apply within 30 days of this Final Order for mitigation of the civil monetary penalty based upon restitution made to Maryland Investors."

The Securities Commissioner's Final Decision contains explicit findings of fact and conclusions of law based upon the ALJ's detailed summary of the evidence, the ALJ's findings of fact based on the evidence, and the Commissioner's review of the record. The following facts are gleaned from the Commissioner's and ALJ's findings.

At all relevant times, appellee USSC was registered as a broker-dealer in Maryland and the District of Columbia. Appellee Roberts was registered as a broker-dealer agent in Maryland. On August 22, 1991 and again on January 1, 1992,

---

1. The Securities Commissioner agreed with the ALJ that appellees also violated C.A. § 11–301(1), but he declined to base his final order upon that violation because it was not charged in the Order to Show Cause or any amendment thereto.

2. The Securities Commissioner found that a reduction in the fine was appropriate because his decision eliminated appellee's violation of C.A. § 11–301(1) and because the Order to Show Cause sought fines totaling \$30,000.

USSC entered into an agreement with Printron to act as a placement agent for a private placement of Printron's stock. Although Printron had issued other securities that were registered and being sold in Maryland at the time, Printron planned to sell this offering through a private placement exemption from the registration requirement.[3]

In September 1991, a proceeding instituted by the United States Securities and Exchange Commission (SEC) resulted in a Final Judgment and Permanent Injunction against Printron and one of its officers, Eleanor L. Schuler, regarding the offer or sale of securities. As a result, Printron's stock offering was disqualified from the private placement exemption to Maryland's registration requirements. *See* COMAR 02.02.04.15B(4)(b) (prior to 1995 recodification) ("bad boy" disqualification provisions).

In late 1991, Printron applied for, and was granted, a "no-action" letter[4] permitting the sale of a limited number of shares of the offering to a specified Maryland resident, Clarence L. Elder. In subsequent letters of early 1992, the "no action" position was expanded to permit the sale of securities valued at $627,777 to Mr. Elder and certain members of his family. Those family members were Barbara Elder, LeAnn Elder, C. Louise Elder, Lisa M. Elder, and Josephine Parrish. Mr. Elder, however, recommended the stock to other Maryland residents, including his sister, Cherry Elder Smith, Joseph W. Peters, Frederick Kail, Dr. Joanne Waeltermann, Michael G. Peters, and George Guest (who in turn recommended the stock to Warren Dorsey). Mr. Elder advised these individuals to contact appellees about purchasing the stock.

---

**3.** To be sold in Maryland, a security either must be registered with the Securities Division, or the security or transaction must fall within the scope of one of the statutory exemptions to the registration requirement. MARYLAND SECURITIES ACT, § 11–501.

**4.** A letter usually written by an attorney for a governmental agency (e.g.SEC) to the effect that, if the facts are as represented in a preceding request for a ruling, he will advise the agency not to take action because the facts do not warrant it. Black's Law Dictionary, 726 (6th ed.1991).

During the summer of 1991, appellees attempted to arrange for the sale of shares in the Printron offering to Dr. Joanne Waeltermann, a Maryland resident, but the subscription agreements were rejected by counsel for Printron because the prospective purchaser lived in Maryland. Subsequently, appellees attempted to arrange for the sale of shares in the Printron offering to Dr. Waeltermann and other Maryland residents through a District of Columbia trust created by Curtlan R. McNeily, Esq., an attorney who represented USSC. The attempt to sell the stock through the trust was also rejected by Printron's counsel, and McNeily advised USSC to abandon the idea of using the trust.

A number of Maryland residents wanted to purchase shares in the private placement offering, but were advised by appellees or by Printron that they could not do so because they were residents of Maryland, where the stock could not be traded. After the idea of purchasing the stock through a trust was abandoned, however, McNeily advised various Maryland residents, who were referred to him by appellees, that they could purchase the stock through a person appointed as their agent in the District of Columbia. McNeily informed the Maryland residents that the shares could be held in the District of Columbia until they could be traded legally in Maryland. He then suggested that he be appointed an agent for the prospective Maryland investors. Admittedly, McNeily was attempting to construct a legal arrangement whereby residents of Maryland could purchase shares of the private placement stock.

At the suggestion or direction of appellee Roberts, several Maryland residents, including Dr. Joanne Waeltermann, Joseph Peters, Wendell Phillips, Cherry Elder Smith, Michael Peters, and Warren Dorsey, appointed McNeily as their agent. In his capacity as agent, he obtained shares of the Printron offering in the District of Columbia on the Maryland residents' behalf.

Each of the individual purchasers was a Maryland resident, and they made all the arrangements for the appointment of

McNeily as agent and for the purchase of the Printron stock from within Maryland. McNeily purchased the Printron stock for the Maryland investors through USSC and paid USSC a fee or commission in excess of $10,000 out of the funds provided by the Maryland investors. He retained the share certificates in "street name"[5] until December 1992, after which the stock was registered for sale in Maryland. At that time he prepared individual share certificates and sent them to the Maryland investors reflecting the number of shares purchased on their behalf.

Additionally, the Securities Commissioner's Final Decision adopted the ALJ's findings of fact restated below:

 (1) Appellees omitted material facts in its dealings with Maryland investors Joseph Peters, Warren Dorsey, and Frederick Kail regarding the inability of Maryland residents to purchase the Printron stock.

 (2) Appellees made a false and misleading statement to Maryland investor Frederick Kail when Roberts stated that the reason that a trustee was necessary for Printron stock purchase[s] was because the transaction involved IRA funds.

 (3) Appellees omitted a material fact in its dealings with Maryland investor Dr. Joanne Waeltermann regarding the inability of USSC to act in Maryland as a broker in purchasing the Printron stock.

 (4) Appellees omitted a material fact in its dealings with Maryland investor Cherry Elder Smith concerning ownership of the Printron stock she purchased.

 (5) Appellees made misleading statements that led Maryland investor Michael G. Peters to believe that the delay in the registration of Printron stock in Maryland was due to "paperwork" and would only last for a few days

---

**5.** Black's Law Dictionary, 991 (6th ed.1991) defines "street name" as follows: "Securities held in the name of a broker instead of his customer's name are said to be carried in a 'street name.'.... Street name is used for convenience or to shield the identity of the true owner."

or weeks. Appellees failed to state to Michael G. Peters that the true reason for the delay in registering the stock for sale in Maryland was a result of a prior court injunction against Printron and a Printron officer obtained in an SEC enforcement action.

In finding that a fine was appropriate, both the ALJ and appellant considered appellees' bad faith and misleading behavior in the offer and sale of Printron stock. Appellees' bad faith was evidenced by their attempts to mislead the NASD and the Securities Division as to the existence, nature, and extent of appellees' transactions with twenty-eight Maryland investors. Although the records reflect that USSC apparently received commissions for the transactions, Roberts, through USSC, acted as though he had no knowledge of the transactions, and alleged that the payments were for consulting work. Appellees also refused to provide the Securities Division with any documents in response to administrative subpoenas *duces tecum* issued by the Securities Commissioner.

Nevertheless, appellees sought judicial review of the Securities Commissioner's decision in the circuit court, which reversed the decision against appellees on the grounds that the one-year limitation under C.J. § 5–107 applies to administrative proceedings for a fine, and the Securities Division's action was brought more than one year from the date of the alleged violations. This appeal followed.

## DISCUSSION

### STANDARD OF REVIEW

█ Because this is an appeal from a circuit court's review of an agency's final decision, our role in this appeal " 'is precisely the same as that of the circuit court.' " *Dep't of Human Resources v. Thompson*, 103 Md.App. 175, 188, 652 A.2d 1183 (1995) (quoting *Dep't of Health & Mental Hygiene v. Shrieves*, 100 Md.App. 283, 303–04, 641 A.2d 899 (1994)). A petition to a circuit court for judicial review of an agency's final administrative decision is governed by the Maryland Administrative Procedure Act (APA). MD.CODE (1995 Repl.

Vol., 1997 Supp.), State Gov. (S.G.) § 10–222. Section 10–222(h) of the APA provides that, upon review of an agency decision, the circuit court may:

(1) remand the case for further proceedings

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

S.G. § 10–222(h)(3) (1995).

 A reviewing court may not make its own findings of fact, *Board of County Comm'rs v. Holbrook*, 314 Md. 210, 218, 550 A.2d 664 (1988), or supply factual findings that were not made by the agency. *Ocean Hideaway Condo. v. Boardwalk Plaza*, 68 Md.App. 650, 662, 515 A.2d 485 (1986). Findings of fact are essential in order for the reviewing court to review meaningfully the agency's decision. *See Gray v. Anne Arundel Co.*, 73 Md.App. 301, 307–09, 533 A.2d 1325 (1987). Moreover, it is the agency's function to determine the inferences to be drawn from the facts. On review, neither the circuit court nor this Court may substitute its judgment for that of the agency. *Eberle v. Baltimore County*, 103 Md.App. 160, 165, 652 A.2d 1175 (1995).

 On appeal, our task is to review the agency's findings of fact under the substantial evidence test. *Thompson*, 103 Md.App. at 190, 652 A.2d 1183 (citing *State Election Bd. v. Billhimer*, 314 Md. 46, 58–59, 548 A.2d 819 (1988)). "Substantial evidence is 'such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.' " *Thompson*, 103 Md.App. at 191, 652 A.2d 1183 (quoting *Caucus Distributors, Inc. v. Md. Securities Comm'r*, 320 Md. 313, 323–24, 577 A.2d 783 (1990)); see also *Relay Improvement Ass'n v. Sycamore Realty Co., Inc.*, 105 Md.App. 701, 714, 661 A.2d 182 (1995), *aff'd* 344 Md. 57, 684 A.2d 1331 (1996); *Moseman v. County Council of Prince George's County*, 99 Md.App. 258, 262–63, 636 A.2d 499, *cert. denied*, 335 Md. 229, 643 A.2d 383 (1994) (both stating that "substantial evidence means more that a 'scintilla of evidence,' such that a reasonable person could come to more than one conclusion."). In other words, the question on appeal becomes whether a reasoning mind could reasonably have reached the agency's factual conclusion. *Eberle*, 103 Md.App. at 166, 652 A.2d 1175. " 'The test is reasonableness, not rightness.' " *Snowden v. Mayor of Baltimore*, 224 Md. 443, 448, 168 A.2d 390 (1961) (quoting 4 Davis, *Administrative Law Treatise*, § 29.11 (1958)). The reviewing court ordinarily must view the agency's findings of fact with deference. *Snowden*, 224 Md. at 448, 168 A.2d 390. Further, we may uphold the agency's decision only if " 'it is sustainable on the agency's findings and for the reasons stated by the agency.' " *United Parcel Serv., Inc. v. People's Counsel*, 336 Md. 569, 577, 650 A.2d 226 (1994) (quoting *United Steelworkers v. Bethlehem Steel*, 298 Md. 665, 472 A.2d 62 (1984)).

 In contrast to factual challenges, when the question before the agency involves one of statutory interpretation or an issue of law, our review is more expansive. *Liberty Nursing Center v. Dep't of Health & Mental Hygiene*, 330 Md. 433, 443, 624 A.2d 941 (1993). Under this more expansive review, we may substitute our judgment for that of the agency. *Thompson*, 103 Md.App. at 190, 652 A.2d 1183. This standard of review is aptly named the "substituted judgment standard." *Id.* Thus, we are not bound by the agency's statutory or legal conclusions. *Id*; *Dep't of Health and Mental Hygiene v. Riverview Nursing Centre, Inc.*, 104 Md. App. 593, 657 A.2d 372, *cert. denied*, 340 Md. 215, 665 A.2d 1058 (1995); *Dep't of Health and Mental Hygiene v. Reeders*

*Memorial Home, Inc.,* 86 Md.App. 447, 586 A.2d 1295 (1991). Moreover, we are "under no constraints in reversing an administrative decision which is premised solely upon an erroneous conclusion of law." *People's Counsel for Baltimore County v. Maryland Marine Mfg. Co.,* 316 Md. 491, 497, 560 A.2d 32 (1989). "A challenge to a regulatory interpretation is, of course, a legal issue." *Thompson,* 103 Md.App. at 191, 652 A.2d 1183 (citation omitted).

"Modification or reversal of the agency's decision is only appropriate when the petitioner has demonstrated that substantial rights of the petitioner have been prejudiced by one or more of the causes specified in § 10–222(h)." *Thompson,* 103 Md.App. at 191, 652 A.2d 1183 (citing *Bernstein v. Real Estate Comm'n,* 221 Md. 221, 230, 156 A.2d 657 (1959) *appeal dismissed,* 363 U.S. 419, 80 S.Ct. 1257, 4 L.Ed.2d 1515 (1960)).

Lastly, in the absence of evidence to the contrary, administrative officers will be presumed to have properly performed their duties and to have acted regularly and in a lawful manner. *Johnstown Coal & Coke Co. v. Dishong,* 198 Md. 467, 474, 84 A.2d 847 (1951). All legal intendments will be indulged in favor of the administrative decision. *Id.* It will be presumed to be correct and valid, as long as the parties involved have been given a reasonable opportunity to be heard. *Id.*

Accordingly, we must examine the record to determine whether the ALJ and the Commissioner applied the correct law and whether there was substantial evidence from which a reasonable mind could arrive at the factual conclusions reached by the ALJ. As a threshold matter, however, we address the legal issue as to limitations.

## I

Appellant argues that the circuit court erred when it held that the statute of limitations embodied in C.J. § 5–107 applied to administrative actions for monetary fines or penal-

ties. In support thereof, appellant avers that the language of C.J. § 5–107 and applicable case law reflect that the statute applies only to judicial proceedings as opposed to administrative hearings. We agree.

Section 5–107 contains a one-year statute of limitations that begins to run from the date of the offense. The statute provides as follows:

A prosecution or suit for a fine, penalty or forfeiture shall be instituted within one year after the offense was committed.

Appellant relies heavily, as did the ALJ, on our majority opinion in *Nelson v. Real Estate Comm'n,* 35 Md.App. 334, 370 A.2d 608 (1977). By contrast, appellees rely substantially on the concurring opinion from *Nelson* authored by Judge Lowe.

In *Nelson,* we held, *inter alia,* that an administrative hearing before the Real Estate Commission was not a "prosecution" or a "suit" under C.J. § 5–107 and, hence, the statute of limitations was not applicable to such administrative proceedings. We set forth three basic reasons why the defense of limitations did not apply in *Nelson.* First, we stated that the proceedings before the Real Estate Commission had as their objective the protection of the public from unscrupulous and underhanded practices of real estate brokers. We reasoned that, just as members of the bar are subject to disciplinary proceedings for professional misconduct, so are real estate brokers. We pointed out that the Court of Appeals had, on a number of occasions, ruled that limitations do not apply in attorney grievance matters because the purpose of such proceedings was to protect the public. We were unable to perceive any difference between protecting the public from unscrupulous practices by an attorney and the same type of practice by a real estate broker. *Nelson,* 35 Md.App. at 339–342, 370 A.2d 608.

Citing *In re Diener,* 268 Md. 659, 670, 304 A.2d 587 (1973), *cert. denied, Broccolino v. Maryland Comm'n on Jud. Disabilities,* 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974), we stated that, as with matters before the Attorney Grievance

Commission or the Judicial Disabilities Commission, the regulatory action by the Real Estate Commission is "neither civil nor criminal in nature." Consequently, we concluded that a hearing before such an administrative body could not be a "prosecution" or a "suit" within the meaning of C.J. § 5–107. That conclusion was based on the definitions of the words "prosecution" and "suit" as used in C.J. § 5–107 that we set forth as follows:

> "Prosecution" means a criminal action brought by the State, in a *court* of competent jurisdiction, by way of indictment, information, or other charging document, against an accused for violation of the common or statutory criminal laws of this State.
>
> "Suit" means an action at law or equity brought in a *court* having jurisdiction over the subject matter.

*Nelson,* 35 Md.App. at 339–342, 370 A.2d 608 (emphasis added). We noted that both definitions contained the word "court" and that, patently, an administrative agency is not a court, and, therefore, the proscription contained in C.J. § 5–107 could not apply thereto. *Id.*

Next, we pointed out that the principal purpose of a hearing before the Real Estate Commission was to determine the fitness of the licensee. In that regard, we agreed with the position of former Attorney General Hall Hammond (later Chief Judge of the Court of Appeals) that

> a hearing before an administrative board to determine whether a license shall be revoked or suspended is neither a prosecution nor a suit within the meaning of the statute of limitations. 36 Op. Att'y Gen. 97, 98 (1951).

*Nelson,* 35 Md.App. at 342, 370 A.2d 608.

Finally, we noted that the legislature, which is presumed to know of the interpretations made of statutes by the Attorney General, had met at least annually since Attorney General Hammond handed down his opinion in 1951, but that body had not changed the statute. Consequently, the General Assembly had *sub silentio* tacitly approved the Attorney General's interpretation.

We ultimately reduced the holding, as is often the case, to a fact specific statement that the statute of limitations was not applicable to a proceeding before the Real Estate Commission when the subject before the Commission was a determination of whether a license would be suspended or revoked. Clearly, however, the impetus of our reasoning was two-fold: (1) an administrative hearing was not a "prosecution" or "suit" within the meaning of C.J. § 5–107, and (2) the underlying purpose of protecting the public from unscrupulous practices by real estate brokers preempted the defense of limitations.

In his concurring opinion, Judge Lowe expressed concern that we analogized a business license procedure to the responsibilities of the Court of Appeals in disciplining an officer of the Court. In other words, he thought it illogical to analogize between a licensed business such as real estate and the learned profession of the law. Judge Lowe was also disturbed by our strict interpretation of the words "prosecution" and "suit" so as not to include administrative hearings. Additionally, he did not agree with our reliance upon the statutory interpretation maxim that the legislature is presumed to know of statutory interpretations made by the Attorney General. Without attempting to discuss *ad nauseam* all the reasons why the concurring opinion in *Nelson*, and likewise the corresponding position of the lower court and appellees, do not persuade us, we shall point out but a few.

First, the concurring opinion ignores the significance of the Commission's role in protecting the public. Thus, the concurring opinion misses the true underlying concern that guided our majority opinion. Second, although we agree with Judge Lowe's belief that holding the legislature accountable for knowledge of the decisions of the Attorney General is a lofty expectation, we must point out that the *Nelson* majority opinion was published by this Court in 1977. To date, C.J. § 5–107 remains the same and, although the legislature may not be aware of an opinion of the Attorney General, we presume it is aware of our published opinions. Third, Judge Lowe's view that C.J. § 5–107 was intended to relate "only to monetary fines, monetary penalties, and monetary forfeitures"

does not negate the apparent desire of the legislature to limit the one-year statute of limitations to "prosecutions" and "suits," i.e., judicial proceedings, thereby excluding administrative hearings from the purview of statute. Lastly, even though the concurring opinion contains some valid points, it is what it is—a concurring opinion, and not that of the majority.

Consequently, following the spirit, reasoning, and holding of the majority opinion in *Nelson*, we hold that the statute of limitations codified in C.J. § 5–107 does not apply to the administrative proceeding initiated by the Securities Commissioner in this case for the following reasons. First, the proceedings before the ALJ and Securities Commission had as their objective the protection of the public from the fraudulent and misleading practices of securities brokers. Just as members of the bar and real estate brokers are subject to disciplinary proceedings for professional misconduct, so are securities brokers.

Indeed, in securities fraud cases, it is not uncommon for a fraudulent scheme to go undetected, by design, for a substantial period of time, particularly in cases in which the victims are unsophisticated. In this case, appellees refused to produce any documents pursuant to administrative subpoenas issued by the Securities Commissioner in November 1993, thus slowing the investigation. In early 1995, the Securities Division brought an enforcement action against appellees at which time they raised the defense of limitations.

Although the court below looked to various cases and the history of C.J. § 5–107 and its predecessor to support its finding that the statute does not apply to license or other nonmonetary forfeitures, there is no support for its further conclusion that C.J. § 5–107 applies to administrative hearings for monetary fines. The circuit court erred in rejecting the clear rationale of the majority opinion in *Nelson*. Instead, it relied on the concurring opinion, which ascribed an overly broad meaning to the words "court," "prosecution," and "suit," placing administrative hearings within their purview. To the contrary, administrative boards and officials are instrumentali-

ties of the executive; although they are sometimes character-ized as quasi-judicial, they are not judicial at all. *Dep't of Natural Resources v. Linchester Sand and Gravel Corp.*, 274 Md. 211, 222–23, 334 A.2d 514 (1975) (citing *Dal Maso v. County Comm'rs*, 182 Md. 200, 205, 34 A.2d 464 (1943)). Notwithstanding, therefore, the quasi-judicial nature of some administrative hearings, we hold fast to the definitions of "prosecution" and "suit" that we set forth in the *Nelson* majority as excluding administrative proceedings from the limitations defense embodied in C.J. § 5–107.

Furthermore, as with matters before the Real Estate Commission, the Attorney Grievance Commission, and the Judicial Disabilities Commission, the regulatory action by the Securities Commission is neither civil nor criminal in nature. Accordingly, a hearing before such an administrative body is not a "prosecution" or a "suit" as used in C.J. § 5–107.

Citing *Washington Sub. San. Comm'n v. Pride Homes*, 291 Md. 537, 544, 435 A.2d 796 (1981), appellant also asserts that the doctrine of sovereign immunity precludes the statute of limitations from running against the Securities Division because it is a State agency. In support of that position, appellant contends that sovereign immunity requires a strict construction of C.J. § 5–107, and that, because C.J. § 5–107 does not expressly relate to administrative proceedings, it should not apply to such hearings. We agree.

Because we believe that our above analysis regarding *Nelson* is dispositive of the issue of limitations, our opinion on appellant's sovereign immunity argument may well be an exercise in semantics. Consequently, our explanation will be brief. We agree with appellee that the word "prosecution" in C.J. § 5–107 indicates an action by the State, thereby indicating that the State legislature has specifically waived its sovereign immunity when it comes to prosecutions for monetary fines, penalties, or forfeitures. As we opined above, however, the term prosecution, as used in C.J. § 5–107, refers to actions brought in a court, as opposed to administrative proceedings. As such, the legislature has not waived the sovereign immuni-

ty of State administrative agencies when it comes to C.J. § 5–107.

## II

We now discuss the issues presented by appellee that were presented below, but not reached by the lower court. We do so recognizing that this Court has the discretion to decide questions raised below, but not decided in the circuit court. *Jolly v. First Union Sav. & Loan, Inc.,* 235 Md. 161, 165, 201 A.2d 4 (1964). When all the issues of law were presented before the trial court, the fact that the court chose to rest its decision on one of several grounds, finding it unnecessary to decide the remaining issues, does not preclude the appellate court from reaching those issues. *Montgomery County v. Maryland Soft Drink Ass'n,* 281 Md. 116, 122, 377 A.2d 486 (1977). Ordinarily, we will not decide an issue unless it plainly appears by the record to have been raised in or decided by the trial court. Md. Rule 8–131(a) (1997). We may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal. *Id.*

## A

Appellee first contends that there was no sale of securities in the State of Maryland that implicated the regulatory authority of the Securities Commissioner. We disagree.

The offer and sale of securities in Maryland is governed by the Maryland Securities Act, Title 11 of the Corporations and Associations Article, Annotated Code of Maryland. Section 11–501 of the Maryland Securities Act sets forth the general requirement that a security offered or sold in Maryland be registered with the Securities Division unless it or the particular transaction is exempt from the registration requirement. Exemptions to the registration requirement are delineated in § 11–601 *et seq.* and related regulations.

Section 11–301 of the Maryland Securities Act prohibits fraud in the offer or sale of securities. It states:

It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly to:

(1) Employ any device, scheme, or artifice to defraud;

(2) Make any untrue statement of material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit on any person.

Accordingly, the regulatory authority of the Securities Commissioner is implicated by the offer *or* sale of securities in the State of Maryland. Accepting the agency's findings of fact, as we must, we hold that the there was substantial evidence of an offer or sale of securities in the State of Maryland to implicate the regulatory authority of the Securities Commissioner. We explain.

The USSC was a registered broker-dealer in Maryland. Roberts was a registered broker-dealer agent in Maryland. The USSC was appointed a placement agent for a private placement of Printron stock to be offered in Maryland. During the summer of 1991, appellees attempted to sell shares in the Printron offering to Dr. Joanne Waeltermann, a Maryland resident, but the subscription agreement was rejected by counsel for Printron because Dr. Waeltermann lived in Maryland. Subsequently, appellees tried to arrange the sale of shares in the Printron offering to Dr. Waeltermann and other Maryland residents through a District of Columbia trust. This attempt was also rejected by Printron's counsel.

After the idea of using a trust to purchase the stock was abandoned, McNeily, USSC's attorney, advised various Maryland residents referred by appellants that the prospective Maryland purchasers could purchase the stock through a person appointed as the Maryland residents' agent in the District of Columbia. Several Maryland residents testified below that Roberts suggested or directed them to appoint

McNeily as their agent so that he could obtain shares of the Printron offering.

The individual purchasers were all Maryland residents, and they performed all activities in the appointment of McNeily as agent and made all arrangements for the purchase of the Printron stock from Maryland. McNeily purchased the Printron stock for the Maryland investors through USSC and paid USSC a fee or commission in excess of $10,000. The purchasers never physically left the State of Maryland. Purchase monies were sent from Maryland. Telephone calls were made from and received in Maryland. Clearly, there was substantial evidence to support the agency's finding of an offer or sale of securities.

## B

Next, appellees assert that they did not make any untrue statements of material fact or omit any material fact necessary in order to make the statements not misleading. We see it differently.

A fact is deemed "material" when it induces a party to enter into a contract or transaction. *Wegefarth v. Wiessner*, 134 Md. 555, 568, 107 A. 364 (1919); *Boulden v. Stilwell*, 100 Md. 543, 552, 60 A. 609 (1905). When there is a duty to disclose material facts, a non-disclosed fact should be deemed material only if knowledge of that fact would have caused the party to act differently or somehow change his or her position.

In this case, several of the Maryland residents testified at the administrative level that appellees made untrue statements about—and concealed the reason why—the Printron special offering was not available for sale in Maryland, i.e., the SEC disciplinary action against Printron and its corporate officer resulting in the unavailability of the private offering exemption due to Maryland's "bad boy" disqualification provisions. The deceit involved the registration and ownership of the purchased stock. Undoubtedly, such information was material to the purchasers.

## C

Lastly, appellees contend that their actions did not constitute an act, practice, or course of business that operated as a fraud or deceit on those attempting to purchase shares of the Printron private offering. Again, we must disagree with appellees' position.

■ We note that § 11–301 of the Maryland Securities Act states that, "[i]t is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly to:

. . .

(3) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit on any person."

As such, the deceit of any person by any act, practice or course of business in connection with the offer, sale, or purchase of any security is a violation of the Maryland Securities Act, regardless of whether the deceit involved a material fact. The same findings that support our holding in Section B above are applicable here. Clearly, the Maryland residents were deceived by acts or a course of business in connection with the offer and sale of stock.

The Securities Commissioner's conclusion that appellees engaged in an act, practice, or course of business operating as a fraud or deceit on those attempting to purchase the Printron stock, was based on the findings of the ALJ, which were based on the testimony of several of the purchasers. Thus, the conclusion was not arbitrary and capricious. Rather, it was supported by competent, material, and substantial evidence.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED; CASE REMANDED FOR ENTRY OF JUDGMENT AFFIRMING THE FINAL DECISION OF THE MARYLAND SECURITIES COMMISSIONER.**

**COSTS TO BE PAID BY APPELLEES.**